Christopher P. Yuhl, Esq.
CA Bar No. 13223
YUHL CARR LLP
4676 Admiralty Way, Suite 550
Marina del Rey, CA  90292
Ph:  (310) 827-2800
Fx:  (310) 827-4200
cyuhl@yuhlcarr.com

N. Kirkland Pope, Esq. (pro hac to be submitted)
POPE McGLAMRY, P.C.
3391 Peachtree Road, NE, Suite 300
Atlanta, GA  30326
Ph: (404) 523-7706
Fx: (404) 524-1648
efile@pmkm.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BUCHANAN and PAULINE BUCHANAN, <br><br> Plaintiffs, <br><br> v. <br><br> WRIGHT MEDICAL TECHNOLOGY, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

CASE NO. _____

**COMPLAINT FOR DAMAGES**
   1. Negligence
   2. Strict Products Liability – Failure to Warn
   3. Strict Products Liability – Manufacturing Defect
   4. Fraudulent Concealment
   5. Fraudulent Misrepresentation
   6. Loss of Consortium

**JURY TRIAL DEMANDED**

Plaintiffs bring this action for injuries sustained from Defendant's defectively designed hip implants that resulted in bodily injury to Patrick Buchanan from corrosion, Cobalt and Chromium metal debris and Cobalt and Chromium metal ion cast off from the stem and neck components and file this their Complaint for Damages and submit the following:

///

**COMPLAINT FOR DAMAGES**

1

**PARTIES**

1.    At all relevant times hereto, Plaintiffs Patrick and Pauline Buchanan, were and are adult residents and citizens of the State of California, residing in the County of Los Angeles, Carson, California.

2.    Defendant Wright Medical Technology, Inc., is a Delaware corporation, with its principal place of business at 1023 Cherry Road, Memphis, Tennessee 38117, and is registered to do business in the State of California, and at all times relevant hereto did business in the State of California.   Defendant Wright Medical Technology, Inc. ("Wright" or "WMT" or "Defendant") is a wholly owned subsidiary of Wright Medical Group, Inc.

3.    Defendant Wright Medical Technology, Inc. was, at all relevant times, engaged in the business of designing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third-parties or related entities, various prosthetic orthopedic products, including the Wright Medical Profemur® Hip products that are in issue in this civil action.

**JURISDICTION & VENUE**

4.    This Court has diversity jurisdiction pursuant to 28 U.S. C. §1332.  The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, as this action involves a products liability claim by a severely injured party. There is complete diversity of citizenship between the parties.

5.    Defendant is subject to the *in persona* jurisdiction of this Court, and venue is therefore proper pursuant to 28 U.S.C. §1391, as Defendant did have and continues to do business within the State of California and has had continuous and systematic contacts with the State of California, and has consented to jurisdiction in the State of California.  Defendant is a

**COMPLAINT FOR DAMAGES**

corporation and deemed to reside in a judicial district in which it is subject to personal jurisdiction. 28 U.S.C. §1391(c). As Defendant is subject to personal jurisdiction in California, and a substantial part of the events giving rise to this claim occurred in this judicial district, venue is proper in this Court. 28 U.S.C. §1391(a)(1).

6.　　At all times relevant hereto, Defendant developed, manufactured, advertised, promoted, marketed, sold and/or distributed the defective Profemur® Total Hip System, including the Profemur® cobalt-chromium femoral neck and titanium femoral stem components, throughout the United States, including California.

## FACTUAL ALLEGATIONS

### PLAINTIFF PATRICK BUCHANAN'S PROFEMUR® HIP

7.　　On or about July 24, 2012, Plaintiff Patrick Buchanan had Wright artificial hip implant components implanted in both of his hips in procedures known as total hip arthroplasties ("THA").

8.　　Orthopedic surgeon Jason C. Snibbe, M.D. ("Dr. Snibbe") implanted the Wright artificial hips in Mr. Buchanan.

9.　　Plaintiff's July 24, 2012 hip implant surgery was performed at the Cedars-Sinai Medical Center in Los Angeles, CA.

10.　　Dr. Snibbe did not breach any generally accepted standard of care in the field of orthopedic surgery in his care and treatment of Plaintiff or negligently cause any injury to Plaintiff in any of the following respects:

(a)　　In the care or treatment that he provided to Plaintiff prior to beginning the hip implant surgery;

(b)　　In the hip implant surgery he performed on Plaintiff; or

**COMPLAINT FOR DAMAGES**

(c)     In the care or treatment that he provided to Plaintiff, subsequent to Plaintiff's hip implant surgery.

11.     Based upon the patient population that Wright intended its Profemur® artificial hip devices to be implanted in, at the time of implantation with his Wright Profemur® hip devices, Plaintiff Patrick Buchanan was an appropriate patient to be implanted with the Wright Profemur® hip devices he received.

12.     Dr. Snibbe recommended the Wright Profemur® hip devices to Plaintiff and indicated that the Wright Profemur® hip devices were appropriate for him.

13.     Plaintiff Patrick Buchanan reasonably relied upon Dr. Snibbe in deciding to proceed with hip replacement surgery in both his hips and have the Wright Profemur® hip devices implanted.

14.     Before or during the course of the Plaintiff's July 24, 2012 surgery, Defendant arranged for the specific Wright hip components that were implanted in Plaintiff to be delivered to the Cedars-Sinai Medical Center and/or Dr. Snibbe for implantation in Plaintiff.

15.     On July 24, 2012, Plaintiff Patrick Buchanan had implanted in his right hip the following specific Wright artificial hip components:

(a)     Profemur® Z Stem
         Ref:  PHAO-0240
         Size 5
         Lot: 1421056;

(b)     Profemur® Plus CoCr Modular Neck
         Ref:  PHAC-1254
         Long 8° VAR/VAL
         Lot: 030108292810;

(c)     Wright Conserve Total New Head A-Class
         Ref: 38AC-4000
         Size: 40 mm
         Lot 1435350;

(d)     Conserve Neck Sleeve

**COMPLAINT FOR DAMAGES**

4

Ref: 38NS-0000
Lot: 1445425

16.     On July 24, 2012, Plaintiff Patrick Buchanan had implanted in his left hip the following specific Wright artificial hip components:

    (a)     Profemur® Z Stem
        Ref:  PHAO-0240
        Size 5
        Lot: 0711373369;

    (b)     Profemur® Plus CoCr Modular Neck
        Ref:  PHAC-1252
        Lot: 0511358072;

    (c)     Wright Conserve Total New Head A-Class
        Ref: 38AC-4000
        Size: 40 mm
        Lot 1438774;

    (d)     Conserve Neck Sleeve
        Ref: 38NS-3500
        Lot: 1422916

17.     At the time of implant, each of the components of Plaintiff's Wright hip implants were in substantially the same condition in all relevant respects as when they left Defendant's control.

18.     Subsequent to the date of implantation of his Wright Profemur® hip systems, Plaintiff used his Wright hip implants in a normal and reasonably foreseeable manner.

19.     After initial recovery and for a period of time from implant surgery, Plaintiff's Wright total hip implants performed as expected.

20.     On or about June 6, 2017, not quite five years after the implant surgery, Plaintiff reported to Dr. William T. Long for revision surgery of his right and left hip implants.  Dr. Long recommended the revision surgery after Plaintiff presented with pain, loss of function and loss of mobility.

**COMPLAINT FOR DAMAGES**

21.     Plaintiff's revision surgery was necessary due to corrosion at the metal-metal junction between the cobalt-chromium modular neck and the titanium stem of both hip implant systems.

22.     The revision surgery was performed by Dr. Long at St. Vincent Medical Center in Los Angeles, California.

23.     In the operative report from the revision surgery, Dr. Long noted "corrosion between the neck and the femoral stem."

24.     In the course of the revision surgery performed on June 6, 2017, Dr. Long removed the left and right Wright Medical Profemur® modular necks from Plaintiff.

## THE WRIGHT MEDICAL PROFEMUR® HIP

25.     Profemur® Modular Necks were first patented by Cremascoli Ortho ("Cremascoli"), and marketed by it in 1986.

26.     In December 1999, Defendant Wright acquired Cremascoli, its product lines, documents, and manufacturing facilities, including the Profemur® line of hip products.

27.     After the acquisition of Cremascoli, Wright re-designed the Profemur® modular artificial hip stem and modular neck and expanded the product line to include additional models or versions of Profemur® Stems and Profemur® Modular Necks.

28.     After the acquisition of Cremascoli, Wright branded what is at times referred to by Wright as the Wright Medical Profemur® Total Hip System.

29.     Sometime after the date of August 25, 2009, Wright Medical began to offer for distribution and sale in the United States Profemur® Modular Necks made of a cobalt-chromium alloy instead of the previous Profemur® Modular Necks comprised of titanium.

30.     Since 1985, Defendant Wright Medical Technology, Inc., directly or through its parent corporation, subsidiaries or affiliates, Wright Medical Group, Inc., Wright Medical

Europe, S.A., Cremascoli Ortho, Wright Cremascoli Ortho, and others, designed, manufactured, labeled, marketed, promoted, distributed, and sold in the United States artificial hips with modular components.

31.     Sometime after December 13, 2000, Defendant Wright Medical Technology, Inc. began to manufacture, label, market, promote, distribute and sell in the United States the Wright Medical Profemur® Hip System and its components, including the Profemur® Hip System modular necks and stems.

32.     Between the dates of December 13, 2000 and August 25, 2009 the Profemur® Hip System included neck and stem components made of a titanium alloy, generally known as Ti6Al4V.

33.     After Wright titanium Profemur® Modular Necks began to be implanted, Wright received reports of its Profemur® titanium modular necks fracturing (i.e., breaking into two pieces) at the oblong taper distal end where it is seated in the Profemur® stem.

34.     At some point in time prior to July 24, 2012, Wright had notice that higher than normal rates of early failure of the Profemur® titanium modular necks due to fretting and corrosion had been observed in patients.

35.     As the number of reported Wright titanium Profemur® Modular Neck fractures continued to increase, believed to be in excess of 800 at the time of filing this Complaint, case studies appeared in medical journals reporting the fracture of Wright titanium Profemur® modular necks.

36.     As the number of reported Wright titanium modular neck fractures continued to increase and the FDA became aware of its dismal clinical performance, case studies appeared in medical journals and identifying micromotion and fretting corrosion at the neck-stem junction as the cause and mode of fracture and failure.

37.     In July of 2008, Wright disseminated a technical bulletin to surgeons, including Dr. Snibbe, where it represented that the "[M]odular neck clinical experience and extensive laboratory tests have demonstrated the coupling between the modular neck and femoral implant, when properly assembled, provides structural reliability, absence of significant micromovement, and <u>absence of fretting corrosion</u>." (emphasis added).

38.     Wright published this document to allay fears and to continue sales of the Profemur® hip implants as reports of failure of the device were becoming known in the industry.

39.     In order to combat reports of failure and to maintain sales, Wright also advertised and promoted a false, misleading and untruthful survivorship rate of its Profemur® hip implant systems to surgeons, including Dr. Snibbe.

40.     On or before July of 2012, Wright was aware that the design of the coupling between the modular neck and femoral implant had shown fretting corrosion in a number of failed implants.  In fact, Wright had investigated failed modular neck and stem couplings with the Profemur® hip implant system and had determined that fretting corrosion was a contributing cause of failure.

41.     Upon information and belief, Dr. Snibbe relied upon the representations made by Wright in paragraph 37 above in deciding to implant the subject device in Plaintiff.

42.     If Dr. Snibbe had been provided the correct number of failures associated with the Profemur® modular neck taper design, instead of the false and misleading survivorship numbers promoted by Wright, he would not have chosen the Profemur® hip system for implantation in Plaintiff.

43.     At least as early as 2009, Wright was informed in writing by experts it had retained that a CoCr version of its titanium Profemur® modular neck would not be a safe alternative design change to the existing titanium modular neck.

44.     At least as early as 2009, Wright was informed by experts it retained that changing the composition of the Profemur® modular neck from titanium to cobalt chromium would create new risks of adverse tissue reaction from corrosion at the neck-stem junction.

45.     At some point in time prior to July 24, 2012, Wright had notice that a higher than normal rate of early failure of its Profemur® line of hip implant devices were failing by fracture at the modular neck junction secondary to micromotion, fretting and corrosion.

46.     As the number of reported Wright titanium Profemur® modular neck fractures continued to increase, Wright, rather than redesigning its hip implant system to eliminate the modular neck-stem junction and thereby eliminate micromotion and fretting corrosion, instead began to design and develop a Profemur® modular neck made of a cobalt-chromium ("CoCr") metal alloy, in contradiction of its own experts' opinions.

47.     On April 16, 2009, Wright submitted a Section 501(k) premarket notification of intent to market a device generally identified as Profemur® hip system modular necks made of a CoCr alloy to the United States Department of Health & Human Services, Food and Drug Administration ("FDA").

48.     The FDA never approved the safety or effectiveness of Wright's Profemur® Hip Implant System and product line of modular necks, but instead merely accepted Wright's assertion that the Profemur® Hip System was substantially equivalent to an already legally marketed device.

49.     The 510(k) clearance process is distinct from the FDA's pre-market approval (PMA) process in that clearance does not require clinical confirmation of safety and effectiveness and as such the manufacturer retains all liability for the assertions of safety and effectiveness.

50.     Sometime on or after August 25, 2009, Wright began to offer with the Profemur® Hip System a modular neck component made of a CoCr alloy for distribution in the United States.

51.     In promoting its Profemur® CoCr Modular Necks, Wright claimed that these CoCr modular necks would result in less fretting than occurred with titanium modular necks.

52.     The design of the Wright Medical Profemur® CoCr modular neck, when coupled with the design of the Wright Medical titanium Profemur® hip stems, is such that it, in fact, promotes the process of fretting corrosion at the modular neck-stem junction.

53.     The CoCr Profemur® modular necks that Wright Medical designed and manufactured were designed to be used with most, if not all, of the same femoral heads and most, if not all, of the same Profemur® hip stems as were its titanium Profemur® modular necks.

54.     In promoting its Profemur® CoCr modular necks, Wright Medical in 2009 stated, "Product complaint data reported to Wright to date does not indicate an increased risk, as compared to traditional titanium necks, of adverse events due to taper junction fretting and corrosion or fractures for PROFEMUR® CoCr Modular Necks."   [See Profemur® CoCr Modular Necks Frequently Asked Questions, Wright Medical publication MH 1619-812]

55.     Wright was aware from the industry literature, testing and its own internal investigation that Cobalt Chromium metal debris and ion cast off associated with modular junctions posed a greater risk of adverse tissue reaction and failure.

56.     Despite its knowledge concerning fretting corrosion associated with the Profemur® modular neck taper and the high risk of adverse tissue reaction associated with Cobalt Chromium metal debris, Wright continued to promote that there was no increased risk.

57.     Wright purposefully failed to disclose to Dr. Snibbe on or before Plaintiff's implant surgery that fretting corrosion at the designed taper coupling between Profemur®

modular neck and femoral implant had been determined by experts to be probable and may result in tissue reaction and failure.

58.     The claim by Wright Medical in promoting its Profemur® CoCr modular necks, Wright Medical has stated, "Product complaint data reported to Wright to date does not indicate an increased risk, as compared to traditional titanium necks, of adverse events due to taper junction fretting and corrosion or fractures for PROFEMUR® CoCr Modular Necks," was not supported by unbiased sound scientific testing.

59.     The claim by Wright Medical that "Product complaint data reported to Wright to date does not indicate an increased risk, as compared to traditional titanium necks, of adverse events due to taper junction fretting and corrosion or fractures for PROFEMUR® CoCr Modular Necks" was and is false and misleading.

60.     Wright knew in 2009 that Cobalt Chromium metal debris creates a higher risk of adverse tissue reaction at lower exposure amounts than does titanium.

61.     Even if Wright's claims were true, its promotion was misleading and masked the underlying risks associated with the modular neck taper design with the CoCr modular neck.

62.     Claims by Wright Medical that these CoCr modular necks would result in less fretting than occurred with titanium modular necks was not supported by sound scientific testing.

63.     Claims by Wright Medical that its Profemur® CoCr modular necks would result in less fretting than occurred with titanium modular necks were and are false and misleading.

64.     The design of the Wright Profemur® CoCr Modular Neck, when coupled with the design of the Wright Medical titanium Profemur® hip stems, is such that it, in fact, promotes the process of fretting corrosion at the modular neck-stem junction.

**COMPLAINT FOR DAMAGES**

11

65.     Claims by Wright Medical that mating a CoCr modular neck with a titanium stem would not result in corrosion at a level that would be problematic for patients, were not supported by sound scientific testing.

66.     The design of the Wright Profemur® CoCr Modular Neck, when coupled with the design of the Wright titanium Profemur® hip stems is such that it, in fact, promotes the process of corrosion at the modular neck/stem junction.

67.     As early as 1995, Wright was aware of the increased risk of tissue damage associated with Cobalt and Chromium metal debris, corrosion and metal ion cast off from fretting corrosion created by friction between component parts made of Cobalt and Chromium.

68.     Prior to offering its Profemur® CoCr Modular Necks for distribution or sale in the United States, Wright did not adequately test its design of CoCr Profemur® modular necks for fretting corrosion or the biological effect of the corrosion on the body after implantation in patients.

69.     Prior to offering its Profemur® CoCr Modular Necks for distribution or sale in the United States, Wright did not adequately test its design of CoCr Profemur® modular necks for corrosion after implantation in patients.

70.     Wright rushed the Profemur® CoCr Modular Necks to market without adequately testing them for in vivo performance or test the effects of corrosion on human tissue.

71.     Wright's rush to market was done to preserve market share and its profits from the sale of its Profemur® hip products.

72.     Prior to July 24, 2012, Wright had been informed that its Profemur® CoCr modular necks were corroding in patients to the extent that revision surgeries were necessary to remove the Profemur® CoCr Modular necks.

73.     Wright purposefully did not inform D. Snibbe that the Profemur® hip system was at a high risk of modular taper junction corrosion resulting in adverse tissue reaction and failure.

74.     As a result of the failure by Wright to inform Dr. Snibbe of failures due to corrosion associated with this design, Dr. Snibbe in ignorance of the high risk of fretting corrosion selected the Profemur® hip implant system for Plaintiff.

75.     Wright knew or should have known that as of July 24, 2012, the date Plaintiff received his Wright Medical CoCr necks and titanium modular stems:

a)  Wright had not adequately tested the Profemur® CoCr Modular Necks to simulate in vivo performance for resistance to fretting corrosion;

b)  Wright had not adequately tested the Profemur® CoCr Modular Necks to simulate in vivo performance for resistance to crevice corrosion;

c)  Wright's Profemur® CoCr Modular Necks would be subject to fretting corrosion;

d)  There was an increased risk of fretting corrosion at the neck-stem junction;

e)  There was an increased risk of crevice corrosion at the neck-stem junction; and,

f)  There was a substantial risk that patients' bodies would be adversely affected by the exposure to corrosion, metal debris and metal ions.

76.     The neck-stem junctions of the Profemur® cobalt-chromium modular neck, coupled with a Profemur® titanium hip stem, are subject to significant movement which results in fretting corrosion, crevice corrosion, and metal ion release.

77.     The neck-stem junctions of the Profemur® CoCr  modular neck, coupled with a Profemur® titanium hip stem, and the movement which results in significant fretting corrosion,

crevice corrosion, and metal ion release, directly and proximately causes adverse medical conditions which led to the failure, revision surgery and damage to Plaintiff's hips.

78.     Product complaint data reported to Wright prior to July 24, 2012 indicated an increased risk of adverse events due to taper junction fretting and corrosion for Wright Medical Profemur® Modular Necks when coupled with Wright Medical Profemur® titanium hip stems, as compared to competitors titanium necks.

79.     Product complaint data reported to Wright prior to July 24, 2012 indicated an increased risk of adverse events due to corrosion, as compared to traditional monoblock stems.

80.     Based upon what Wright knew or should have known before July 24, 2012, Wright should have informed orthopedic surgeons using its Profemur® hip products that there is an increased risk of corrosion for Wright Medical Profemur® CoCr Modular Necks when coupled with Wright Medical Profemur® titanium hip stems.

81.     Based upon the facts and allegations set forth above, the Wright Medical Profemur® CoCr Modular Neck, Profemur® titanium modular stem and the Profemur® hip system are defective in design in that the risks inherent in this product's use for hip replacement, when weighed against the utility or benefit derived from the product, outweigh the benefit which might have gained by placing these defective products in the body of Plaintiff.

82.     Additionally, the Wright Medical Profemur® CoCr Modular Necks, Profemur® titanium modular stems and the Profemur® hip systems implanted in Plaintiff were defective in their manufacture, as they were manufactured such that the tolerances between the stem and neck components did not comply with Wright's design specifications.

83.     Based upon the facts and allegations set forth above, the Wright Medical Profemur® CoCr Modular Neck and the Profemur® hip system are defective in their labeling in that they do not perform as represented, and the risks that were inherent in this product being

used for hip replacement, when weighed against the utility or benefit derived from the product, outweigh any alleged benefit.

84. Based upon the facts and allegations set forth above, the Wright Medical Profemur® CoCr Modular Necks, Profemur® titanium modular stems and the Profemur® hip system are unreasonably dangerous in that the risks that were inherent in this product being used for hip replacement, when weighed against the alleged utility or benefit derived from the product, outweigh the benefit.

85. The Wright Medical Profemur® CoCr Modular Neck and Stem implanted in Plaintiff did not meet consumers' expectation in that it results in early failure, does not perform as marketed, results in severe permanent injury and necessitates early surgical intervention.

86. Defendant was negligent in its design, manufacture, distribution and sale, marketing, promotion, and labeling of the Wright Medical Profemur® CoCr Modular Neck, Profemur® titanium modular stem and the Profemur® hip system.

87. Defendant was negligent in the failure to warn patients and/or surgeons that they had received product complaint data that did indicate an increased risk of adverse events due to taper junction fretting and corrosion, as compared to other available safe alternative devices.

88. Defendant was negligent in the failure to warn patients or surgeons that they had received product complaint data that did indicate an increased risk of adverse events due to corrosion, as compared to other available safe alternative devices.

89. Defendant was negligent in the failure to warn patients and surgeons that Defendant was told by experts in the fields of biomechanics and metallurgy that coupling the CoCr neck with the Profemur® titanium stems would create a risk of corrosion and fretting resulting in adverse tissue reaction.

///

**COMPLAINT FOR DAMAGES**

### PLAINTIFF PATRICK BUCHANAN'S INJURIES AND DAMAGES

90.     On or about June 6, 2017 it was discovered that the Profemur® CoCr Modular Necks implanted in Plaintiff Patrick Buchanan's right and left hips had failed, meaning that due to corrosion of the oblong taper of the CoCr Modular Neck where it seated in the pocket of the Profemur® titanium stem was causing irreversible physical injury to the Plaintiff.

91.     On or about July 24, 2012, the Profemur® hip system implanted in Plaintiff's left and right hips were discovered to have failed as a direct and proximate result of the actions, inaction, conduct, and negligence of the Defendant, as alleged in this Complaint.

92.     As a direct and proximate result of the conduct of Defendant as set forth in this Complaint, Plaintiff sustained injuries and damages including, but not limited to undergoing surgery to remove and replace his failed Wright Profemur® hips; past and future pain and anguish, both in mind and in body; permanent diminishment of his ability to participate in and enjoy the affairs of life; medical bills associated with the replacement procedure and recovery therefrom; future medical expenses; loss of enjoyment of life; disfigurement; physical impairment, and other injuries not fully known at this time.

93.     Plaintiff's injuries suffered were both factually and proximately caused by the Defendant's defective Profemur® hip systems.

94.     Plaintiff's injuries suffered were both factually and proximately caused by the Defendant's unreasonably dangerous Profemur® hip systems.

95.     Plaintiff's injuries suffered were both factually and proximately caused by Defendant's fraudulent concealment of information that would have prevented or limited injury to Plaintiff.

96.     Plaintiff is entitled to recover for all economic and special damages incurred, including but not limited to damages for subsequent surgeries, rehabilitative services, follow up

doctor visits and all expenditures incurred as a result of the additional operations and follow up procedures.

97.     Plaintiff is entitled to compensation for permanent disability as a result of the failure of this Wright Medical Profemur® hip replacement device which caused substantial injury.

98.     Plaintiff further shows that he is entitled to recover for all noneconomic and compensatory damages allowed by law, including, but not limited to, pain and suffering for all pain and suffering that he has incurred as a result of the defective product, the follow-up surgery, rehabilitation, and constant pain that occurs as a result of the failure of the product.

**LIABILITY**

**FIRST CLAIM FOR RELIEF**

**NEGLIGENCE**

99.     Plaintiff incorporates by reference as if fully set forth herein the facts alleged in paragraphs 1-98 of this Complaint.

100.    Defendant owed a duty of reasonable care to the general public, including Plaintiffs, when it designed, manufactured, assembled, inspected, tested, marketed, placed into the stream of commerce, and sold the Wright Medical Profemur® CoCr Modular Neck, the Wright Medical Profemur® titanium modular stem and the Wright Medical Profemur® Total Hip System, to protect users from an unreasonable risk of harm when using the device for its intended purpose, in a reasonably foreseeable manner.

101.    Defendant breached this duty by designing, manufacturing, assembling, inspecting, testing, marketing, distributing and selling the Wright Medical Profemur® CoCr Modular Neck, the Wright Medical Profemur® titanium modular stem and the Wright Medical Profemur® Total Hip System in a defective and unreasonably unsafe condition including, but

not limited to, its foreseeably appreciated risk of harm from the device's propensity for fretting, corrosion and failure. A reasonably careful medical device manufacturer would not have acted in this manner.

102.    Likewise, Defendant owed Plaintiff a duty of reasonable care to discover the defects and to inform and/or warn him or his implanting surgeon of the defects once they were discovered, and Defendant failed to warn of the dangers inherent in the reasonably foreseeable use of the Wright Medical Profemur® Total Hip System, further placing Plaintiff at risk for harm and injury.  Also, Defendant owed Plaintiff and/or Plaintiff's surgeon a continued duty to warn of risks associated with its Wright Medical Profemur® Total Hip System to limit the damages that Plaintiff sustained.

103.    Defendant was negligent in the particulars set forth in this Complaint, and such negligence was a direct and proximate cause of the incident and injuries set forth herein.

**SECOND CLAIM FOR RELIEF**

**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

104.    Plaintiff incorporates by reference as if fully set forth herein the facts alleged in paragraphs 1-98 of this Complaint.

105.    Plaintiff Patrick Buchanan was damaged by the defective Profemur® CoCr modular Neck, the Profemur® titanium modular Stem, and the Profemur® Total Hip System.

106.    Wright was engaged in the business of manufacturing, selling and distributing the Profemur® CoCr modular Neck, the Profemur® titanium modular Stem, and the Profemur® Total Hip System.

107.    At all times relevant herein, Defendant was engaged in the design, development, testing, manufacturing, marketing and sale of the Profemur® Total Hip System devices.

**COMPLAINT FOR DAMAGES**

108.    Defendant designed, manufactured, assembled and sold the Profemur® Total Hip System devices to medical professionals and patients knowing that they would then be implanted in patients in need of hip prosthesis.

109.    Defendant distributed and sold the Profemur® Total Hip System devices in a condition such that when they left its place of manufacture, in their original form of manufacture, they included the defects described herein.

110.    The Profemur® Total Hip System devices were expected to and did reach Plaintiff Patrick Buchanan and his implanting surgeon, Dr. Snibbe, without substantial change or adjustment in their condition as manufactured and sold by Defendant.

111.    Defendant's Profemur® Total Hip System devices designed, developed, tested, manufactured, marketed and sold or otherwise placed into the stream of commerce by Defendant were in a dangerous and defective condition and posed a threat to any user or consumer of the Profemur® Total Hip System devices.

112.    At all times relevant herein, Plaintiff Patrick Buchanan was a person whom Defendant should have considered to be subject to the harm caused by the defective nature of the Profemur® Total Hip System devices.

113.    Defendant's Devices were implanted and used in the manner for which they were intended.

114.    This use has resulted in severe physical and emotional and other injuries to Plaintiff Patrick Buchanan.

115.    Defendant knew or should have known through testing, adverse event reporting or otherwise that its Profemur® Total Hip System devices created a high risk of bodily injury and serious harm.

**COMPLAINT FOR DAMAGES**

116.    Defendant had a duty to warn its sales representatives/distributors, implanting surgeons such as Dr. Snibbe and patients such as Plaintiff Patrick Buchanan, and Defendant breached its duty in failing to provide adequate and timely warnings or instructions regarding their Profemur® Total Hip System devices and their known defects.

117.    Defendant, furthermore, breached its duty to warn at pre-surgery and/or post-surgery by (a) failing to adequately communicate the warning to Defendants' sales representatives/distributors and/or to the ultimate users, i.e., Plaintiff Patrick Buchanan and/or his implanting physician; and/or (b) by failing to provide an adequate warning of the Device's potential risks.

118.    Adequate efforts to communicate a warning to the ultimate users were not made by Defendant (or Defendant's sales representatives/distributors) and, to the extent a warning was communicated by Defendant, the warning was inadequate.

119.    The warnings (pre-surgery and/or post-surgery) to Plaintiff Patrick Buchanan and her implanting physician about the dangers the Device posed to consumers were inadequate.  Examples of the lack and/or inadequacy of Defendant's warnings include, but are not limited to, one or more of the following particulars:

       (a)    the Device contained warnings insufficient to alert Plaintiff Patrick Buchanan and Plaintiff's physicians as to the propensity for corrosion, associated with the Device, subjecting Plaintiff Patrick Buchanan to risks which exceeded the benefits of the Device;

       (b)    the Device contained misleading warnings emphasizing the efficacy of the Device while downplaying the risks associated with it, thereby making use of the Device more dangerous than the ordinary consumer would expect;

(c)     the Device contained insufficient and/or incorrect warnings to alert consumers, including Plaintiff Patrick Buchanan, through its prescribing physicians regarding the risk, scope, propensity, frequency, duration and severity of the adverse events associated with the Device;

(d)     the Device did not disclose that it was inadequately tested;

(e)     the Device failed to convey adequate post-marketing warnings regarding the risk, severity, propensity, frequency, scope and/or duration of the dangers posed by the Device; and

(f)     the Device failed to contain instructions sufficient to alert physicians and consumers to the dangers it posed and to give them the information necessary to avoid or mitigate those dangers.

120.    Plaintiff Patrick Buchanan used the Device for its intended purpose, i.e., hip replacement.

121.    Plaintiff Patrick Buchanan could not have discovered any defect in the Device through the exercise of due care.

122.    Defendant, as designer, manufacturer, marketer and distributor of medical devices is held to the level of knowledge of an expert in the field.

123.    Plaintiff Patrick Buchanan and his implanting physician did not have substantially the same knowledge about the Device as Defendant who was the designer, manufacturer, or distributor of the Device.

124.    As a direct and proximate result of Defendant's failure to adequately communicate a warning and/or failure to provide an adequate warning and other wrongful conduct as set forth herein, Plaintiff Patrick Buchanan has sustained and will continue to sustain

severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages, as set forth herein.

125.    As a direct result of Defendant's failure to warn and/or inadequate warning and Defendant's other tortious conduct, Plaintiff Patrick Buchanan has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

126.    As a direct and proximate result of Defendant's failure to warn and/or inadequate warning and Defendant's other tortious conduct, as set forth herein, Plaintiff has suffered and will continue to suffer injuries, damages, and losses, and is entitled to compensatory damages in an amount to be determined by the trier of fact.

## THIRD CLAIM FOR RELIEF

## STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT

127.    Plaintiff incorporates by reference as if fully set forth herein the facts alleged in paragraphs 1-98 of this Complaint.

128.    Plaintiff was damaged by the defective Wright Medical Profemur® CoCr Modular Neck, the Wright Medical Profemur® titanium modular stem, and the overall Wright Medical Profemur® Total Hip System, including by having to undergo revision surgery less than 5 years post-implant.

129.    Prior to, on, and after the dates of Plaintiff's initial hip surgery, and at all times relevant to this action, Wright was engaged in the business of manufacturing, selling and distributing the Wright Medical Profemur® CoCr Modular Neck, the Wright Medical Profemur® titanium modular stem, and the overall Wright Medical Profemur® Total Hip System.

130.    The Wright Medical Profemur® Total Hip System used in Plaintiff's hip replacement surgery was supplied in a defective condition in its manufacture, such that because

the tolerances between the stem and neck components did not comply with Wright's design specifications it would experience motion, fretting and corrosion at the stem-neck junction, rendering it unreasonably dangerous.

131.    Plaintiff's physicians employed the Wright Medical Profemur® Total Hip System in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Defendant.

132.    The Wright Profemur® Total Hip System's defective condition proximately caused Plaintiff's damages.

133.    As a direct and proximate result of the manufacturing defects of the Profemur® components implanted in Plaintiff Patrick Buchanan, Plaintiff has suffered and will continue to suffer injuries, damages and losses, and is entitled to compensatory damages in an amount to be determined by the trier of fact.

## **FOURTH CLAIM FOR RELIEF**

## **FRAUDULENT CONCEALMENT**

134.    Plaintiff incorporates by reference as if fully set forth herein the facts alleged in paragraphs 1-98 of this Complaint.

135.    Defendant had a duty to accurately and truthfully represent to the medical community, Plaintiff, and the public that Wright Medical Profemur® CoCr Modular Neck, and the Wright Medical Profemur® Total Hip System, had not been adequately tested and found to be safe and effective for the treatment of patients requiring a hip replacement.  Instead, the Defendant knew, but deliberately failed to communicate this to Plaintiff or Plaintiff's surgeon.

136.    Defendant had a duty to inform, but fraudulently concealed from the medical community, implanting orthopedic surgeon Dr. Snibbe, Plaintiff, and the public that the Wright Medical Profemur® CoCr Modular Neck coupled with the Wright Medical Profemur® titanium

modular stem in the Wright Medical Profemur® Total Hip System had an unreasonable and dangerous risk of corroding and causing bodily injury.

137.    Defendant knew of the risk of corrosion and resulting bodily injury present in the device implanted in Plaintiff and Plaintiff nor Plaintiff's surgeon had this information nor could they have discovered this information through reasonable diligence.

138.    The Defendant had a duty to communicate the increased risk and known failures associated with the device implanted in Plaintiff to Plaintiff's surgeon.

139.    Plaintiff's surgeon justifiably relied upon Defendant to communicate known risks and failures in both the decision to implant the device and follow up treatment after index surgery.

140.    Had Defendant accurately and truthfully represented to the medical community, Dr. Snibbe, Plaintiff, and the public the material facts that it knew regarding the risks of the Wright Medical Profemur® CoCr Modular Neck coupled with the Wright Medical Profemur® titanium modular stem as part of the Wright Medical Profemur® Total Hip System, Plaintiff and/or Plaintiff's surgeon  would not have utilized Defendant's Wright Medical Profemur® Total Hip System.

141.    Had Defendant not fraudulently concealed the increased risk of fretting corrosion, effects of fretting corrosion, the known failures of the device from Plaintiff or Plaintiff's surgeon, Plaintiff's injuries would have been avoided or limited.

142.    Defendant had a duty to disclose the fact that its experts had informed Wright of the risks of corrosion and adverse tissue reaction associated therewith to Plaintiff's surgeon.

143.    Defendant knew that if it disclosed the risks associated with the Profemur® CoCr neck coupled with its Profemur® titanium stem, that its ability to sell these devices would diminish.

144.   For fear of losing market share and sales, Defendant concealed the fact that the subject device was deemed to have risk of corrosion, which would subject patients to failure from adverse tissue reaction from surgeons, including Dr. Snibbe.

145.   As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

## FIFTH CLAIM FOR RELIEF

## FRAUDULENT MISREPRESENTATION

146.   Plaintiff incorporates by reference as if fully set forth herein the facts alleged in paragraphs 1-98 of this Complaint.

147.   Defendant made false representations of material fact to Plaintiff's surgeon as to the safety and efficacy of the Wright Medical Profemur® CoCr Modular Neck coupled with the Wright Medical Profemur® titanium modular neck in the Wright Medical Profemur® Total Hip System.  Instead of disclosing the heightened risks of corrosion, failure, and permanent injury, Wright represented:

      a)  that there was no indication of an increased risk of adverse events due to fretting and corrosion at the neck-stem taper junction;

      b)  that lab testing guaranteed structural reliability and the absence of significant micromovement and of fretting corrosion;

c) that product complaint data did not indicate an increased risk of corrosion for Wright Medical Profemur® CoCr Modular Necks when coupled with Wright Medical Profemur® titanium hip stems;

d) that, "[u]tilized in both primary and revision applications, the current [Profemur® modular] neck design has been successfully employed to improve surgical outcomes with no reported failures";

e) that CoCr modular necks would result in less fretting than occurred with titanium modular necks; and

f) that the Wright Medical Profemur® Total Hip System, including its component parts, were safe and effective, and were safer and more effective than other treatments for hip replacements.

148. Defendant knew that the representations alleged in paragraph 148 were false, yet Defendant willfully, wantonly, and recklessly disregarded the inaccuracies in its representations.

149. Defendant made these false representations with the intent of defrauding and deceiving the medical community (including implanting surgeon Dr. Snibbe), Plaintiff, and the public, and to induce the medical community, Plaintiff's implanting surgeon, Plaintiff and the public to utilize its Wright Medical Profemur® CoCr Modular Neck coupled with the Wright Medical Profemur® titanium modular stem as part of the Profemur® Total Hip System. Doing so constituted a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff and the public.

150. Plaintiff and his implanting orthopedic surgeon Dr. Snibbe justifiably relied upon Wright's false representations of material fact in deciding to utilize the Wright Medical Profemur® Hip System, including the CoCr modular neck and titanium modular stem.

**COMPLAINT FOR DAMAGES**

151.   Had Plaintiff or Plaintiff's surgeon known the true facts about the dangers and health risks of the Wright Medical Profemur® CoCr Modular Neck coupled with the Wright Medical Profemur® titanium modular stem as components of the Wright Medical Profemur® Total Hip System, they would not have utilized the product.

152.   As a direct and proximate result of Defendant's fraudulent conduct, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

### SIXTH CLAIM FOR RELIEF

### LOSS OF CONSORTIUM

153.   Plaintiffs incorporate by reference as if fully set forth herein the facts alleged in paragraphs 1-98 of this Complaint.

154.   At all times herein mentioned, Plaintiffs Patrick Buchanan and Pauline Buchanan were, and are, legally married as husband and wife.

155.   As a direct and proximate result of Defendant's defective Profemur® Total Hip System and tortious conduct and as a result of the injuries and damages to Plaintiff Patrick Buchanan arising therefrom, Plaintiff Pauline Buchanan has been deprived of the love, companionship, comfort, affection, society, solace and moral support, protection, loss of enjoyment of sexual relations, and loss of physical assistance in the operation and maintenance of the home, of her husband Patrick Buchanan, and has thereby sustained and will continue to sustain damages.

156.   Plaintiff Pauline Buchanan is entitled to recover damages for her loss of consortium in an amount to be determined by the trier of fact.

**COMPLAINT FOR DAMAGES**

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

3

1.      For general damages for personal injuries to Plaintiff according to proof;

4

5

2.      For all past, current, and future medical and incidental expenses, according to proof;

6

7

3.      For all loss of earnings, present and future, and loss of earning capacity, according to proof;

8

9

4.      For punitive and/or exemplary damages in an amount sufficient to punish Defendant and deter similar conduct in the future, according to proof;

10

11

5.      For pre-judgment interest, as provided by law;

12

13

6.      For reasonable attorney's fees;

14

7.      For costs of litigation; and

15

8.      For such other and further relief as this Court may deem just and proper.

16

///

17

///

18

///

19

///

20

///

21

///

22

///

23

///

24

///

25

///

26

///

27

///

28

///

**COMPLAINT FOR DAMAGES**

1

## JURY DEMAND

2

3      Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

4

Dated: June 3, 2019                              Respectfully submitted,

5

6

7                                                Christopher P. Yuhl, CA Bar No. 132233
                                                 YUHL CARR LLP
8                                                4676 Admiralty Way, Suite 550
                                                 Marina del Rey, CA  90292
9                                                Ph:  (310) 827-2800
                                                 Fx:  (310) 827-4200
10                                               cyuhl@yuhlcarr.com

11

12                                               N. Kirkland Pope, Esq.
                                                 (*pro hac to be submitted*)
13                                               POPE McGLAMRY, P.C.
                                                 3391 Peachtree Road, NE, Suite 300
14                                               Atlanta, GA  30326
                                                 Ph:  (404) 523-7706
15                                               Fx:  (404) 524-1648
                                                 efile@pmkm.com
16

17                                               *Attorneys for Plaintiffs Patrick Buchanan
                                                 and Pauline Buchanan*
18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**